UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROBERT ARMSTRONG,

Plaintiff,

v.

JOE HATCHLER, RICK BENOIT, DELL JOHNSON, and L. GANNON,

Defendants.

Civil File No. 00-388 (DSD/JGL)

**REPORT AND RECOMMENDATION**

Robert Armstrong, Federal Correctional Institution - Waseca, P.O. Box 1500, Waseca, MN, 56093, Plaintiff, pro se.

Mary Jo Madigan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for Defendants.

JONATHAN LEBEDOFF, United States Magistrate Judge

Plaintiff, a prisoner at the Federal Correctional Institution in Waseca, Minnesota, ("FCI-Waseca"), is seeking relief for personal injuries he sustained while incarcerated there. The named Defendants, four FCI-Waseca correctional officials, have filed a "Motion To Dismiss, Or In The Alternative, For Summary Judgment," (Docket No. 25), contending that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b) and/or 56.[1] Plaintiff has opposed Defendant's motion, and filed his own motion asking the Court to enter summary judgment in his favor. (Docket Nos. 28, 29, 30 and 31.)

[1] Defendants filed an earlier motion to dismiss or for summary judgment, (Docket No. 9), which was denied without prejudice, because service of process had not yet been properly effected on them. (See Report and Recommendation dated January 19, 2001, [Docket No. 21], and Order dated February 13, 2001, [Docket No. 24].) The service of process defect has now been cured, and Defendants have renewed their motion for dismissal.

FILED 7-5-01
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendants' motion be GRANTED, that Plaintiff's motion be DENIED, and that the action be DISMISSED.

## I. BACKGROUND[2]

In 1997 Defendant was convicted in the U.S. District Court for the Northern District of Iowa on charges of possession of marijuana and being a felon in possession of a firearm. He was sentenced to 76 months in federal prison. At all times relevant to this lawsuit, Plaintiff has served his sentence at FCI-Waseca.

On October 5, 1997, the hot water heaters for the kitchen at FCI-Waseca stopped working. (Affidavit of Dan Eckhart, [Docket No. 11], Exhibit E.) In order to wash dishes, prison officials directed prisoner kitchen workers to heat large quantities of water in the kitchen's sixty-gallon "steam kettles." The prisoners were required to load boiling water from the steam kettles into twenty-gallon plastic tubs. The tubs were placed on rolling carts, and then rolled to the dishwashing area, where the water was unloaded into a sink.

According to Defendant Joe Hatchler,[3] a "Cook Supervisor" at the prison, the "Pots & Pans workers" who were assigned to move the hot water were required to wear "full length, heavy duty aprons; knee high, steel toed rubber boots and elbow length, extra

---

[2] There seems to be almost no dispute about the relevant historical facts of this case. The following synopsis of the factual and procedural background of the case is gleaned from reading Plaintiff's and Defendant's submissions together. The source of specific factual information is cited only where it appears that one party might have some question about the origin or accuracy of such information.

[3] Although the correct spelling of this Defendant's last name apparently is "Hetchler," the Court will follow the spelling used by Plaintiff.

heavy duty rubber gloves." (Eckhart Aff., Exhibit D.) Another prison official, J. McGivern, explains the water-moving operations and accompanying safety precautions as follows:

> "I instructed inmates to scoop the water into clear plastic tubs on a flat-bed cart, and use the 'buddy system' to lift and pour the water into the sinks. I stressed total attention to the surroundings including working slow and that the floor in the area be dry to avoid slipping. I witnessed the first process to insure my instructions were being followed. On all following water moves I witnessed, I made time to monitor to insure the safety procedures were being followed. i.e. No horse-play, gloves in use, 'buddy system, and dry floors."

(Eckhart Aff., Exhibit E.)

Plaintiff was one of the prisoner kitchen workers who was directed to move hot water from the steam kettle area to the dishwashing area. He objected to the assignment, because he believed it was too dangerous. However, Defendants Hatchler and Dell Johnson insisted that Plaintiff must move the boiling water as instructed, or else they would file a report against him. They told him he could be placed in "the hole" (i.e., administrative detention), if he did not do his job as directed. Not wishing to be disciplined, Plaintiff reluctantly performed his job of moving the hot water.

On November 12, 1997,[4] at approximately 5:45 a.m., Plaintiff was performing the hot water moving function at the direction of Defendant Rick Benoit, another correctional official at FCI-Waseca. Plaintiff successfully filed the plastic tub with boiling water, and got the tub onto the rolling cart. However, as he was rolling the cart to the dishwashing area, one of its wheels got stuck in a floor drain. Plaintiff attempted to dislodge the stuck wheel by pushing or pulling on the cart, and as he did so, the hot water in the tub spilled onto his right forearm. Although he was following prescribed safety procedures and wearing

[4] Plaintiff alleges in his complaint that the date was October 12, 1997, but the rest of the record clearly indicates that he must have meant November 12, 1997.

prescribed safety gear, the water spilled inside Plaintiff's right glove and burned his arm. (Eckhart Aff., Exhibit D.)

Defendant Benoit and other prison officials were immediately summoned to the scene, and they promptly initiated first aid procedures. They ran cool water over the burned area on Plaintiff's arm, and made arrangements to have him transported to the prison's Health Services Department. There, he was diagnosed as having a second degree burn. His arm was immediately soaked in cold water, and the burn area was later treated with Silvadene, and covered with telfa and gauze. Plaintiff also was given 30 milligrams of Toradol for pain relief. (Eckhart Aff., Exhibit H.)

Plaintiff's medical care at FCI-Waseca was overseen by Dr. M.A. Gray, who first saw Plaintiff shortly after he came to the Health Service Department for treatment. Plaintiff's medical records indicate that Dr. Gray approved of the initial treatment of Plaintiff's burn. (Eckhart Aff., Exhibit I.) Plaintiff was checked by a nurse about three hours after the accident, and Dr. Gray examined him again the next day. (Id.) Dr. Gray ordered that Plaintiff's dressings should be changed twice a day, that the burn area should be watched, and that Plaintiff should be given more Toradol, as well as motrin, for "better pain control." (Id.) Plaintiff's burn injury was examined and treated every day for at least the first six days after the accident. (Id.) The prison medical records for the first week after the accident indicate that there was no sign of infection, and that the burn was healing without complications. (Id.)

Despite the reported progress of his recovery, Plaintiff frequently expressed dissatisfaction with the medical treatment he was receiving. On the day of the accident, he wrote a note to Dr. Gray asking to be sent to a hospital, in order to "be seen by a doctor

outside." (Id.) Dr. Gray denied that request, and reassured Plaintiff that he was receiving adequate medical care.[5] Plaintiff wrote another note the same day, complaining of pain. (Id.) Dr. Gray responded by telling Plaintiff that he was receiving the "maximum dosage" of pain medication, and that his pain would gradually subside with each passing day. Plaintiff later wrote notes to Dr. Gray complaining about nightmares and also seeking vitamin E, and Dr. Gray responded to those notes as well.

At present, (more than three-and-a-half years after the accident), Plaintiff states that his arm has been "permanent[ly] disfigure[d]." (Affidavit of Robert Armstrong, [Docket No. 32], ¶ 8.) Defendants have not disputed that description.

At some point after his accident, Plaintiff filed a claim for benefits under the Federal Tort Claims Act, ("FTCA"). See 28 U.S.C. § 2671 et seq. On or about August 19, 1999, Plaintiff received written notification that his FTCA claim had been denied, because there was insufficient evidence showing that his injuries had been "caused by the negligent or wrongful act or omission" of a federal government employee. (Attachment to Complaint, [Docket No. 1].) The denial notification also advised Plaintiff that if he wanted to pursue his FTCA claim in federal court, he would have to file suit within six months. On February 18, 2000, (not quite six months after his FTCA claim was denied), Plaintiff filed his present lawsuit.

---

[5] Dr. Gray explained to Plaintiff that –

> "Your burns are being treated as burns of this degree should be treated. I have treated burns like this for over 25 years. You will have to work with us so we can help you."

(Eckhart Aff., Exhibit I.)

Giving Plaintiff's pro se complaint the benefit of liberal construction, (see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)), the Court finds four separate claims that Plaintiff seems to be attempting to advance here:

(1) a claim brought under the FTCA, based on allegations that Defendants negligently disregarded Plaintiff's safety by requiring him to move the tubs of hot water;

(2) a claim brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), based on allegations that Defendants acted with deliberate indifference for Plaintiff's safety by requiring him to move the tubs of hot water;[6]

(3) an FTCA claim based on allegations that he did not receive adequate medical care at FCI-Waseca for his burn injuries; and

(4) a Bivens claim based on allegations that Defendants acted with deliberate indifference for his serious medical needs resulting from the accident.

Plaintiff is asking the Court for (a) injunctive relief that would require the Bureau of Prisons ("BOP") to implement safety measures to prevent future accidents similar to his, (b) monetary damages in the sum of $500,000, and (c) a declaratory judgment holding the BOP responsible for creating unsafe work conditions at FCI-Waseca.

---

[6] The caption of Plaintiff's complaint suggests that his claims are brought under 42 U.S.C. § 1983, which allows an individual to seek legal redress when his or her federal constitutional rights have been violated by state actors. West v. Atkins, 487 U.S. 42, 48 (1988) (to state an actionable § 1983 claim, plaintiff must allege that defendant violated his constitutional rights while acting under color of state law). In this case, however, it appears that all of the named Defendants are federal employees. The functional equivalent of a § 1983 action for a person whose constitutional rights were allegedly violated by federal actors is provided by Bivens. See Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990) ("[a]n action under Bivens is almost identical to an action under § 1983, except that the former is maintained against federal officials while the latter is against state officials"). Plaintiff's complaint will therefore be construed as an attempt to bring claims under Bivens. Defendants have acknowledged that such a construction would be appropriate.

For the reasons discussed below, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's claims.

## II. STANDARD OF REVIEW

A motion to dismiss may be made for "failure to state a claim upon which relief can be granted" and requires a court to review only the pleadings to determine whether the plaintiff has a viable claim. See Fed. R. Civ. P. 12(b)(6). However, where on a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Id.; see also Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996). In this case, the parties have offered, and the Court has considered, information outside the pleadings, namely affidavits and prison records. Consequently, the motion to dismiss will be disposed of as provided in Rule 56.

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. See id. Materiality is determined by examining the substantive law of the claims. See id.

The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e). Although the evidence is examined in the light most favorable to the non-moving party, (see Anderson, 477 U.S. at 255), the non-moving party may not rely on only mere allegations or denials. See Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (citations omitted). Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## III. DISCUSSION

### A. FTCA Claim Based On Negligent Disregard For Plaintiff's Safety

Plaintiff initially contends that his accident and resulting injuries were caused by Defendants' negligence. He alleges that Defendants negligently breached "their duty to provide a safe work enviorment [sic] and to be aware of hazzards." (Plaintiff Opposition To Defendants' Motion To Dismiss Or In The Alternative For Summary Judgment, [Docket No. 28], p. 1.) Plaintiff claims that he is entitled to compensation under the FTCA based on Defendants' negligence.

Defendants contend that Plaintiff's FTCA negligence claim is barred by the "exclusive remedy" provisions of the Inmate Accident Compensation ("IAC") law, included in 18 U.S.C. § 4126. The Court agrees.[7]

---

[7] Defendants have also argued that Plaintiff's FTCA claims should be dismissed because only the United States, (not individual federal employees such as Defendants), can be sued under the FTCA. That argument, however, is only half valid. It is true that only the United States can be held liable under the FTCA. But when a Plaintiff attempts

The IAC law provides compensation to federal prisoners who are injured "in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). In United States v. Demko, 385 U.S. 149 (1966), the Supreme Court held that the IAC law provides the exclusive remedy, comparable to a workers' compensation remedy, for federal prison inmates who suffer personal injuries while working at a federal prison. This means that federal prisoners cannot seek relief under the FTCA for work related injuries; they can only recover benefits under the IAC law. Id. at 151-54. See also Sturgeon v. Federal Prison Industries, 608 F.2d 1153, 1154 (8th Cir. 1979) (federal prisoner's FTCA claim was properly dismissed, because IAC provided his exclusive remedy for injuries sustained while working in a shop area of a federal prison).[8]

In this case, Defendants contend that Plaintiff's FTCA claim based on Defendants' alleged failure to provide a safe work environment is a work-related claim that is barred by

---

to sue a federal employee under the FTCA, for acts performed during the course of his or her employment, the proper course of action is not to dismiss the action, but to construe the action as one brought against the United States itself. See 28 U.S.C. § 2679(d)(1). In this case it would serve no useful purpose to carry out a formal substitution of parties, (i.e., to substitute the United States in place of the named Defendants), because the Court has determined (for the reasons discussed hereafter) that Plaintiff has no viable FTCA claim at all.

[8] The administrative regulations governing the IAC program are set forth at 28 C.F.R. § 301.101 et seq. Section 301.319 of the regulations provides that:

> "Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Tort Claims Act (28 U.S.C. 2671 et seq.). Recovery under the Inmate Accident Compensation procedure was declared by the U.S. Supreme Court to be the exclusive remedy in the case of work-related injury. U.S. v. Demko, 385 U.S. 149 (1966)."

the IAC-Demko exclusive remedy rule. The record clearly demonstrates that Plaintiff's claim is based on injuries suffered in a "work activity in connection with the maintenance or operation" of FCI-Waseca, and Plaintiff makes no effort to deny that fact. It is therefore obvious that Plaintiff's FTCA claim is indeed barred by the IAC-Demko exclusive remedy rule.[9]

B. Bivens Claim Based On Deliberate Disregard For Plaintiff's Safety

Plaintiff also claims that he is entitled to relief under Bivens, because Defendants violated his federal constitutional rights. He contends that Defendants violated his rights under the Eighth Amendment, because they deliberately disregarded his physical safety when they required him to move tubs of hot water from the steam kettles to the dishwashing area.

Our Court of Appeals has recognized that "prison working conditions are subject to scrutiny under the Eighth Amendment." Stephens v. Johnson, 83 F.3d 198, 200 (8th Cir. 1996). To substantiate an Eighth Amendment claim based on unsafe working conditions, a prisoner must demonstrate (1) "that the conditions challenged were 'objectively, sufficiently serious,'" and (2) that the defendant prison official(s) "acted with a 'sufficiently culpable state of mind.'" Id., quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994), and Wilson v. Seiter, 501 U.S. 294, 297, 298 (1991). "In cases challenging prison conditions, 'that state of mind is one of deliberate indifference to inmate health or safety." Stephens,

[9] Defendants have acknowledged that Plaintiff may still apply for IAC benefits. He must apply for such benefits between 15 and 45 days before his release from prison, and such benefits cannot actually be paid to him until after he is released from prison. 28 C.F.R. §§ 301.301(a), 301.303(a). Defendant Gannon informed Plaintiff long ago "that he would be able to initiate his claim under the Inmate Accident Compensation Program within 45 days prior to his release." (Declaration of Larry Gannon, [Docket No. 12], ¶ 5.)

83 F.3d at 200, quoting Farmer, 511 U.S. at 834, and Wilson, 501 U.S. at 302-03.

Thus, a prisoner alleging unconstitutional working conditions must show that the defendant prison officials were aware of a serious risk of harm and that they were deliberately indifferent to that risk. The prisoner cannot prevail merely by showing that prison officials were negligent; i.e., that they knew or should have known about a risk of harm and failed to take reasonable steps to eliminate that risk. Stephens, 83 F.3d at 200 ("[i]n the workplace safety context,... mere negligence or inadvertence is insufficient to constitute deliberate indifference"). For example, "simply failing to provide inmates who move furniture, with steel-toed boots, protective eyewear, and hard hats,... does not establish a constitutional violation...." Id. at 201. See also, Bibbs v. Armontrout, 943 F.2d 26 (8th Cir. 1991), (failure to equip prison machinery with safety guards does not give rise to an actionable Eighth Amendment claim), cert. denied, 502 U.S. 1110 (1992).

Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845 (emphasis in original).

In the instant case, Plaintiff contends that Defendants ordered him to perform a potentially dangerous job -- moving 20-gallon tubs of very hot water on a rolling cart. Defendants do not deny that they directed Plaintiff to do that job. Furthermore, the record shows that Defendants were aware that there could be some potential danger associated with the job – which is why the inmates performing the job were instructed to wear full length heavy duty aprons; knee high steel toed rubber boots, and elbow length extra heavy

duty rubber gloves. Those inmates had been instructed to use a "buddy system" to help each other, to work slowly, to keep the floors dry, to use their gloves and to avoid any "horse play." The safety precautions prescribed by Defendants apparently were quite effective, because there is no evidence suggesting that any accidents occurred during the first five weeks after the kitchen water heaters broke down.

Although Plaintiff has repeatedly alleged that Defendants acted with deliberate indifference, those allegations are merely conclusory. In other words, there are no facts to support Plaintiff's bald allegations of deliberate indifference. To the contrary, the record shows that Defendants took reasonable precautions to prevent exactly the type of accident that Plaintiff unfortunately experienced. With the benefit of hindsight, it could perhaps be argued that Defendants might have done more to prevent Plaintiff's accident, (although Plaintiff offers no suggestions about what additional precautions could have been taken); but there is no evidence showing that Defendants were deliberately indifferent to the potential hazards of the job that Plaintiff was told to perform.

It bears reiterating that "even if the prison officials actually know of a substantial risk to inmate health or safety, the officials may nevertheless escape liability 'if they respond[] reasonably to the risk, even if the harm ultimately was not averted.'" Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996), quoting Farmer, 511 U.S. at 844. It is also worth noting that our Court of Appeals has repeatedly rejected prisoner Eighth Amendment claims based on unsafe work conditions, where the prisoner has been unable to establish that the defendants had a sufficiently culpable state of mind. Stephens, supra; Bibbs, supra; Warren v. State of Missouri, 995 F.2d 130 (8th Cir. 1993). See also Bagola, 131 F.3d at

646-48 (rejecting prisoner's Bivens claim based on unsafe working conditions, where the evidence introduced on summary judgment showed that prison officials "acted reasonably in attempting to prevent accidents").

Based on the evidence of record here, the Court concludes that no reasonable juror could find that any of the named Defendants was deliberately indifferent to a substantial threat to Plaintiff's health or safety. This is a case in which the evidence "is so one-sided that one party [namely Defendants] must prevail as a matter of law." Anderson, 477 U.S. at 252; see also, Foster v. Metropolitan Airports Commission, 914 F.2d 1076, 1082 (8th Cir. 1990) (upholding summary judgment where no juror could reasonably find in favor of the non-moving party). Plaintiff has not pointed to any evidence that would allow a jury to find that any of the Defendants had the type of "culpable state of mind" that is required to prove an Eighth Amendment claim. His conclusory assertions alone are not sufficient to withstand a motion for summary judgment. Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999); Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir.), cert. denied, 469 U.S. 841 (1984). Thus, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's Bivens claim arising from his unfortunate accident.[10]

---

[10] Defendants have argued that the AIC-Demko exclusive remedy rule bars not only Plaintiff's FTCA claim, but also his Bivens claim. At least two circuits courts, however, have rejected that argument. Bagola v. Kindt, 131 F.3d 632, 636-45 (7th Cir. 1997); Vaccaro v. Dobre, 81 F.3d 854 (9th Cir. 1996). As far as the Court can tell, there is no binding precedent on the issue in the Eighth Circuit. (Defendants seem to suggest that the issue was decided by our Court of Appeals in Sturgeon, but that is not so.) Because Plaintiff is unable to substantiate his Bivens claim, (for the reasons discussed in the text), there is no need to anticipate whether the Eighth Circuit will follow Bagola and Vaccaro, or go in a different direction. See e.g., Springer v. United States, No. 99-6276 (6th Cir. 2000) 2000 WL 1140767 (unpublished opinion) at *1 (holding that AIC bars federal inmate's "FTCA and Bivens claims, which arise from the injuries he incurred while performing his prison job") (emphasis added).

C. Claims Based On Allegations Of Inadequate Medical Care

Plaintiff also claims that he did not receive proper medical care for the injuries that he suffered when the hot water spilled on him. He alleges that he asked for additional medical treatment, (without describing what treatment he had in mind), but his requests were denied by the medical staff at FCI-Waseca. He apparently is seeking relief under both the FTCA (for negligent deprivation of proper medical treatment), and Bivens (for deliberate indifference to his serious medical needs).[11]

Both of these claims must be dismissed, because Plaintiff has not shown – or even alleged – that any of the four named Defendants denied him adequate medical care, either negligently or deliberately. In fact, the record clearly demonstrates that the four

---

In addition, Defendants contend that Plaintiff's Bivens claim must be dismissed because he failed to exhaust his administrative remedies with respect to that claim. See 42 U.S.C. § 1997e(a). While that may be a valid argument, the interests of justice would not be best served by dismissing this action for non-exhaustion. It would serve no useful purpose to suggest that Plaintiff's Bivens claim is simply premature due to non-exhaustion, when, in fact, the claim clearly has no merit. See Chellete v. Harris, 229 F.3d 684, 686-87 (8th Cir. 2000) (holding that a prisoner's failure to exhaust administrative remedies does not deprive a federal court of subject matter jurisdiction), cert. denied, 121 S.Ct. 1106 (2001).

Finally, Defendants assert that they have qualified immunity from Plaintiff's Bivens claim. The Court finds it unnecessary to address that issue given the lack of factual support for Plaintiff's Bivens claim.

[11] These two claims are considered separately from the claims discussed above, because it is not clear whether the AIC-Demko exclusive remedy rule applies to claims of inadequate medical care, even if such claims stem from work-related injuries. See Wooten v. United States, 825 F.2d 1039, 1045 (6th Cir. 1987) (suggesting that injured federal prisoner might have a separate FTCA claim for negligent medical care, which would not be barred by the exclusive remedy rule); Scott v. Reno, 902 F.Supp. 1190, 1193-95 (C.D.Cal. 1995) (suggesting that federal prisoner who suffered work-related injury might have a separate Bivens claim based on deliberate indifference to medical needs, which would not be barred by IAC-Demko).

Defendants sued here had nothing to do with Plaintiff's medical care. The named Defendants were responsible for kitchen operations and/or general safety matters at FCI-Waseca. There is no evidence suggesting that any of them had any official or unofficial responsibilities for providing medical care to inmates. Nor is there any evidence suggesting that any of them overruled, or interfered with, any medical advice or prescribed medical treatment issued by any health care provider.

Instead, the record clearly shows that Dr. Gray, a physician working at FCI-Waseca, was solely responsible for Plaintiff's medical care. Dr. Gray examined and treated Plaintiff's injuries on a regular basis, and it was Dr. Gray who addressed Plaintiff's questions regarding the treatment of his injuries. Again, there is simply no evidence, or even any allegations, suggesting that any of the four named Defendants played any role in Plaintiff's medical care. Therefore, Defendants are entitled to summary judgment with regard to Plaintiff's FTCA and/or Bivens claims based on the alleged inadequacy of the medical care he received for his burn injuries.[12]

---

[12] The Court finds at least three reasons why Plaintiff's complaint cannot be construed as an FTCA claim (against the United States) based on alleged wrongdoing by Dr. Gray. First, it is not clear whether Plaintiff has exhausted his FTCA administrative remedies with regard to such a claim. (It appears that his FTCA administrative claim was based solely on the alleged negligence of the four named Defendants.) Second, Plaintiff has not alleged any facts suggesting that Dr. Gray actually did anything wrong. Third, Plaintiff has not complied with the expert witness requirements prescribed by Minn.Stat. § 145.682. See Oslund v. United States of America, 701 F.Supp. 710 (D.Minn. 1988); Bellecourt v. United States, 784 F.Supp. 623 (D.Minn. 1992), aff'd, 994 F.2d 427 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994); Anderson v. United States of America, No. Civ. 5-96-235 JRT/RLE, 1998 WL 92460 (D. Minn. 1998).

Plaintiff's complaint also will not be construed as a Bivens action against Dr. Gray, for the simple reason that Dr. Gray is not named as a Defendant in this lawsuit, and the Court does not have personal jurisdiction over him at this time. Furthermore, it appears that it would be futile for Plaintiff to attempt to bring a Bivens claim against Dr. Gray,

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Defendants' motion for summary judgment should be granted, and that Plaintiff's motion for summary judgment should be denied. Although it will be recommended that Plaintiff's action be dismissed with prejudice, that disposition should have no effect on Plaintiff's potential claim for AIC benefits under 18 U.S.C. § 4126(c)(4) and 28 C.F.R. §§ 301.101 et seq.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss, or in the alternative for summary judgment, (Docket No. 25), be GRANTED, and that summary judgment be entered in favor of Defendants;
2. Plaintiff's motion for summary judgment, (Docket No. 30), be DENIED; and
3. This action be DISMISSED WITH PREJUDICE.

Dated: July 5, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

---

because the present record strongly suggests that Dr. Gray did not act with deliberate indifference toward Plaintiff's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). At most, it appears that Plaintiff had some unexplained disagreement with Dr. Gray about how his burn injuries should be treated. Such a disagreement, however, will not support a Bivens/Eighth Amendment claim. Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) ("mere disagreement with treatment decisions does not arise to the level of a constitutional violation").

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 23, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.